IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGE CARTER, | : | CIVIL ACTION NO. |
| | : | 1:11-CV-2907-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, Commissioner | : | **F I N A L   R E P O R T   A N D** |
| of Social Security, | : | **RECOMMENDATION ON AN** |
| | : | **APPEAL FROM A SOCIAL** |
| Defendant. | : | **SECURITY DISABILITY ACTION** |

Plaintiff George Carter ("Plaintiff" or "Claimant") is a 55-year-old male seeking Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges disability and entitlement to benefits on the basis of various mental and physical conditions, including back and leg pain, arthritis, lung problems, seizures, frequent urination, depression, memory loss and difficulty with concentration. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied Plaintiff's claim for benefits.

Plaintiff filed applications for both SSI and DIB and alleged in each application on onset date of disability of June 15, 2001. Record (hereinafter "R.") at 56. After the Commissioner's staff initially denied the applications, Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ"). ALJ Dana E. McDonald held a hearing on September 30, 2009. R. at 307-342. On October 21, 2009, the ALJ found that Plaintiff was "not disabled" as defined by the Act from the alleged onset date through the date of the decision. R. at 10-22. On July 18, 2011, the Appeals Council of the Social Security Administration denied Plaintiff's Request for Review, making the ALJ's decision final. R. at 5-7. Plaintiff filed this action on August 29, 2011 [1]. It is now before the undersigned and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.       STANDARD FOR DETERMINING DISABILITY

An individual is "disabled" for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, and must prevent the claimant from substantial gainful work. *See* 42 U.S.C. §§ 423(d)(2)-(3).

Claimant and the Commissioner share the burden of proof. Claimant bears the initial burden of establishing a "disability" by demonstrating that he cannot perform his former type of work. Once Claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and impairment, the claimant can perform other jobs. The claimant bears the ultimate burden to prove that he is unable to engage in any substantial gainful activity. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Commissioner must use a five-step sequential analysis:

(1)     Is the applicant is currently working? If so, the claim is denied.

(2)     Is the claimed impairment severe; that is, does the impairment or combination of impairments significantly limit the individual's physical or mental ability to do basic work activities? If not, the claim is denied.

(3)     Does the impairment equal or exceed in severity certain impairments described in the impairment listings in the regulations? if so, the claimant is automatically entitled to disability benefits.

(4)     Does the claimant have sufficient residual functional capacity to perform past work? if so, the claim is denied.

(5)     Considering claimant's age, education, work experience, and residual functional capacity, can claimant perform any other gainful and substantial work? If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

## II.     FINDINGS OF THE ALJ

The ALJ made the following findings of fact ("FOF"):

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

(2) The claimant has not engaged in substantial gainful activity since June 15, 2001, the alleged onset date.

(3) The claimant has the following severe impairments: lung disease, chronic obstructive pulmonary disease and status post tuberculosis.

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant is limited to frequent climbing, balancing, stooping, kneeling, crouching and crawling.  In addition, the claimant must avoid exposure to fumes, odors, dusts, gases and poor ventilation.

(6) The claimant is unable to perform any past relevant work.

(7) The claimant was born on February 16, 1957 and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.

(8) The claimant has a limited education and is able to communicate in English.

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

(11) The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2001, through the date of this decision.

R. at 15-22 (citations omitted).


## III.    CLAIMS OF ERROR

Plaintiff alleges that the decision of the Commissioner erred as follows:

A.    By not finding that Plaintiff's back pain and seizures were severe, and by not developing an appropriate record regarding these conditions.

B.    By identifying Plaintiff's exertional Residual Functional Capacity ("RFC") as "light" without also undertaking a function-by-function analysis of Plaintiff's ability to perform the demands of light work.

C.    By making a credibility assessment that was both unsupported by substantial evidence and the product of legal error.

D.    By relying on the vocational expert's testimony that was itself not based on substantial evidence.

## IV.    SCOPE OF JUDICIAL REVIEW

This Court's review of the ALJ's decision is limited. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court may only determine whether substantial evidence supports the Commissioner's findings, and whether he applied proper legal standards. The Commissioner's findings are otherwise conclusive. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were

the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *Walker*, 826 F.2d at 1000.

## V.    ANALYSIS OF CLAIMS OF ERROR

### A.    *Plaintiff's back pain and seizures*

Plaintiff argues that the ALJ erred by dismissing Plaintiff's back pain, urinary problems and seizures as non-severe. Plaintiff does not contend that the medical evidence of record compels finding that these conditions were severe impairments. Rather, Plaintiff argues that the evidence is incomplete on these subjects, and that the ALJ erred by not developing the record further. Specifically, Plaintiff argues that the ALJ should have ordered additional consultative examinations relating to these conditions and that, without such additional examinations, the record lacks substantial evidence for a finding of non-impairment. As discussed below, the Court disagrees. The ALJ was not obliged to order additional consultative examinations, and the record contains substantial evidence to justify the ALJ's findings.

### 1. *The ALJ's responsibilities to develop the record*

An "ALJ has a basic obligation to develop a full and fair record. This obligation exists even if the claimant is represented by counsel." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). *See also Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."). Remanding for further proceedings is thus appropriate when the ALJ's decision is not supported by substantial evidence, as when an ALJ fails to consider important evidence in the record or fails to sufficiently develop the record. *See Durham v. Apfel*, 34 F.Supp.2d 1373, 1382 (N.D.Ga. 1998) (remanding where an ALJ failed to consider evidence of the severity of an impairment, failed to consider all impairments in combination, omitted an impairment in a hypothetical question posed to a vocational expert, and failed to fully develop the record).

Conversely, "the ALJ 'is not required to order a consultative examination as long as the record contains sufficient evidence . . . to make an informed decision.'" *Beard v. Astrue*, 2012 WL 1965594, No. 3:11-cv-245-J-JRK (M.D. Fla. May 31, 2012), at *3 (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007)). Put another way, the ALJ's obligation to develop the record "is triggered only

when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Ultimately, the decision to require consultative examinations "is within the discretion of the ALJ." *Wren v. Sullivan, M.D.*, 925 F.2d 123, 128 (5th Cir. 1991); *see also Lewis v. Astrue*, 2009 WL 742764, No. CV507-104, at *7 (S.D. Ga., March 20, 2009) (stating that "The Commissioner has broad latitude in ordering a consultative examination in a disability benefit case."); and 20 C.F.R. § 404.1519a(b) (stating that consultative examinations "may" be obtained "when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim").

2. *Analysis*

a. *Back Pain*

The ALJ found that "there is no medically documented impairment related to the claimant's back or leg." R. at 17. The record includes substantial evidence to support this finding and remand is unwarranted.

The ALJ reviewed the medical evidence and determined that "[n]one of the medical records contain any complaints by the claimant of pain in his back or leg." *Id.* Specifically, the ALJ noted that Dr. Kitefre Oboho examined Plaintiff on June 17,

2006 and found, among other things, that Plaintiff demonstrated a normal range of motion in all joints; was able to lay straight back on the exam table; perform a heel-to-toe walk; had a normal gait; and used no assistive devices. *Id*.; *see also* R. at 158-167. The record the ALJ reviewed also included notes of a hospitalization in March 2007. R. at 171-246. This hospitalization resulted from seizures "most likely ... induced by alcohol and/or amphetamines," R. at 185, but also involved extensive physical examinations and reviewing of symptoms, *see, e.g.,* R. at 170-172.

Further, the ALJ obtained two opinions from non-examining physicians who reviewed the medical records as well. Neither of these physicians discerned any severe back pain impairment or suggested any need to further complete the record in this regard. Specifically, in June 2007, Dr. Luis Suarez completed a Residual Functional Capacity Assessment. *See* R. at 249-279. Dr. Suarez determined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk six hours in an eight-hour work day, and was not limited with respect to his ability to push and pull. *See* R. at 250, 272. While Dr. Suarez found Plaintiff was limited as to frequent climbing, balancing, stooping, kneeling, crouching and crawling, he opined that Plaintiff could perform medium work. *See* R. at 251, 273. Dr. Ramona Minnis confirmed these findings in August 2007. *See* R. at 280.

Plaintiff criticizes the ALJ's reliance on Dr. Oboho's evaluation, because it "focused upon lung disease, history of tuberculosis, shortness of breath, fatigue, dizziness and nausea." Pl. Br. at 11. But while these areas were the focus of Dr. Obobo's examination, his notes reflect an extensive physical examination and review of symptoms, including as to the Plaintiff's range of motion and his general well-being. R. at 159-160. It was within the ALJ's discretion to consider this in assessing whether any evidence supported the Plaintiff's claims of back or leg pain.

In the end, Plaintiff's evidence of back pain consisted largely of his own subjective complaints. However, subjective complaints are insufficient to establish an impairment absent medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. § 404.1508 and 20 C.F.R. § 404.908. The Court does not find that these complaints standing along were enough to compel the ALJ to obtain an additional examination on top of the other evidence in the record, which generally did not support the claims. The ALJ therefore possessed medical records that were sufficient for him to make an informed decision, his findings were based on substantial evidence, and no remand is warranted.[1]

---

[1] The Court focuses on Plaintiff's claims of back/leg pain and seizures, because Plaintiff at oral argument focused the Court on those issues. However, the Court has also considered Plaintiff's written arguments that the ALJ erred by not furthering developing the record as to Plaintiff's claim of a urinary impairment. As to that issue,

b.     *Seizures*

Substantial evidence also supports the ALJ's finding that Plaintiff's "medically determinable impairment of seizures does not cause more than minimal limitation in the claimant's ability to perform basic mental or physical work activities and is therefore non-severe." R. at 16. In making this finding, the ALJ notes that "[t]he record does document the occurrence of alcohol-induced seizures . . . [But i]n the absence of alcohol (or amphetamines), there is no evidence that seizures are 'severe' within the meaning of the Act." *Id.* at n.1. Notably, Plaintiff's CT scans and MRIs were normal, and he has not suffered a seizure since his substance-induced seizure of 2007. R. at 18, 315. Dr. Suarez and another non-examining consultant, Dr. Spurgeon Cole, also reviewed the medical records relating to this seizure episode, and did not find a severe impairment. R. at 249-269.

_____

the ALJ's failure to find such an impairment was also based on substantial evidence and the record provided a sufficient basis upon which she could make an informed decision. Specifically, as noted above, the record included detailed physical examinations in 2006 and 2007, both in connection with the Plaintiff's hospitalization in 2007 and the consultative examination of Dr. Oboho. The records reflect no complaints by the Plaintiff of urinary symptoms or other findings by the doctors on this subject. Again, while those examinations may have been focused on other issues, the examiners conducted a general physical review of patient systems, none of which revealed evidence of a severe urinary impairment. The ALJ was entitled to rely on this substantial medical evidence refuting Plaintiff's claim.

Plaintiff argues that his lack of health insurance prevented him from seeking treatment for his seizures. According to Plaintiff, his financial condition thus prevented him from developing record evidence that might have otherwise supported a finding that his seizures were "severe" for purposes of a benefit award. Pl. Br. at 10. Plaintiff argues that the ALJ should therefore have ordered a consultative examination to assess Plaintiff's neurological problems as required under 20 C.F.R. § 404.1512(d) and § 404.1517. *See* Pl. Br. at 11. Here, Plaintiff's recurring headaches, difficulty with concentration and troubles with vision in sunlight were, Plaintiff asserts, "residuals from seizures" that qualify Plaintiff's seizures as "severe." Pl. Br. at 9-10. Put another way, while the ALJ noted documented seizures that treating physicians classified as alcohol- or amphetamine-induced, the ALJ did not consider Plaintiff's additional symptoms that might have indicated to a consulting examiner a severe impairment due to post-seizure brain changes. *Id.* at 10. (*See generally* R. at 102-104, 191-199.)

Again, the Court is persuaded that the ALJ possessed sufficient evidence upon which to make an informed decision and that no additional examination was required. The ALJ had the benefit not only of extensive treating records relating to the 2007 seizure episode, but also multiple consulting experts' analysis of those same records. Indeed, Dr. Cole concluded that the records showed satisfactory concentration, ability to execute activities of daily living, and performance of chores. R. at 267-269. The

Plaintiff's testimony at the ALJ hearing also made clear that his dizzy spells occur only "a couple of times a month" for "three or four minutes." R. at 319-321. The headaches were more frequent, but after treatment with over-the-counter Advil, "it goes away. I can still feel, you know, where it bothers me a little bit, but it ain't bad." R. at 322. Based on the totality of this record, the ALJ was not compelled to order an additional consultative examination.[2]

B.    *The Residual Functional Capacity assessment was sufficiently detailed*

The ALJ found that Plaintiff has the "residual functional capacity to perform light work" except that he "is limited to frequent climbing, balancing, stooping, kneeling, crouching and crawling." R. at 17. Additionally, the ALJ said Plaintiff "must avoid concentrated exposure to fumes, odors, gases and poor ventilation." *Id.* Before concluding that the Plaintiff retained the capacity to perform light work, the ALJ considered all of the medical evidence along with the Plaintiff's testimony. *See id.* at 17-20. The ALJ specifically discussed the assessments of Doctors Oboho, Suarez and Minnis. *See id.* at 18-20.

---

[2] Plaintiff argues that the ALJ failed to consider Plaintiff's symptoms in combination. This contention is unavailing. The ALJ appears to have reviewed the record as a whole with regard to these symptoms and determined that they did not amount to a severe impairment. Substantial evidence supports this finding, for the reasons discussed above.

Plaintiff faults the ALJ's finding on two levels. First, Plaintiff argues that the RFC assessment and underlying findings that the ALJ made should have expressly delineated Plaintiff's work-related abilities on a function-by-function basis. Thus, Plaintiff argues, the RFC assessment should have separately and specifically discussed, and made findings related to, Plaintiff's residual capacity relative to sitting, standing, walking, lifting, carrying, pushing and pulling. *See* Pl. Br. at 12. Plaintiff also argues that Social Security Ruling SSR 96-8[3] requires function-by-function findings relative to Plaintiff's non-exertional impairments, such as his reported dizziness, ninth grade education, need for frequent breaks, fatigue and pain. *See id.* Second, Plaintiff argues, "SSR 96-8 requires a finding that the claimant can perform work at a certain RFC on a regular and continuing basis, defined as the equivalent of 8 hours per day, five days per week." *Id.* The ALJ here failed to make such an express finding, Plaintiff argues, thus requiring remand. *See id.*

SSR 96-8p states that: "The RFC assessment . . . first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

---

[3] Although Social Security Rulings issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts do and should give them some deference as the agency's interpretation of its own regulations, unless they are inconsistent with statutes or regulations. *Holohan v. Massanari*, 246 F.3d 1199, 1203 n. 1 (9th Cir. 2001); *accord Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR § 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184 (S.S.A.). Thus, plainly, the ALJ is to consider each function separately before assessing a claimant's functional capacity. *See* SSR 96-8p, 1996 WL 374184 (S.S.A.) ("Each function must be considered separately . . . even if the final RFC assessment will combine activities.").

However, just because the ALJ does not express written function-by-function findings does not necessarily require remand. *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Here, as in *Freeman*, "the ALJ could have been more specific and explicit in his findings . . ." *Id*. But, also as in *Freeman*, the ALJ did enough to comply with SSR 96-8p. The ALJ first considered and discussed all of the medical and other evidence in the case and only after that concluded that Plaintiff could engage in the activities described. For instance, the ALJ discussed Dr. Oboho's examination, the reviews conducted by Dr. Suarez and Dr. Minnis, and Plaintiff's seizure-related hospitalization records. *See* R. at 17-20. The ALJ's discussion also reviewed Plaintiff's self-reported symptoms and analyzed them in light of the medical evidence. *Id.* The ALJ did not only generally refer to "light work," but referred specifically to the regulations describing in detail the specific exertional demands

associated with "light work." *Id.* The ALJ's RFC finding was sufficiently detailed despite lacking an express discussion of every function.

Plaintiff correctly points out that the ALJ does not specifically address Plaintiff's "ability to perform sustained work activities in an ordinary work setting on a regular and continuous basis." Pl. Br. at 12. But on the facts of this case, no remand is required on this ground either. "Where an ALJ considers all of the evidence, determines that the claimant is not disabled, and also poses a hypothetical to a [Vocational Expert] . . . which limits the claimant to a certain level of exertional activity, the Eleventh Circuit has found that the ALJ complied with the requirements of SSR 96-8p." *Warren v. Astrue*, 2010 WL 3294186, No. 1:09-CV-1408-TWT-ECS, at *7 (N.D. Ga. July 14, 2010) (citing *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007)). Here, the ALJ considered all of the record evidence. *See* R. at 17. The hypothetical the ALJ posed to the vocational expert also limited the Plaintiff to less than medium duty work. *See* R. at 332-333.[4] Put simply, although more

---

[4] To the extent Plaintiff argues that the ALJ erred in not expressly discussing Plaintiff's education in determining his RFC, that also fails. The ALJ expressly included Plaintiff's education in the questions to the vocational expert. R. at 332. Thus, Plaintiff's education level was considered in the ALJ's finding that Plaintiff could perform jobs in the national economy.

discussion may have been helpful, the ALJ's RFC was sufficient, and no remand is required.

### C.    *ALJ's Credibility Assessment*

The ALJ did not fully credit the Plaintiff's testimony about his limitations. *See* R. at 18. Plaintiff argues that the ALJ did not sufficiently describe his reasons for discounting the Plaintiff's credibility and that the ALJ applied the wrong legal standards. *See* Pl. Br. at 14. The Court disagrees. The Court finds that the ALJ's credibility assessment was based on substantial evidence, that the ALJ applied correct legal standards, and that the ALJ sufficiently explained her reasons.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). When these standards are met, "all evidence about the intensity, persistence and functionally

limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561.

"An ALJ's credibility findings are an important factor in the application of the pain standard." *Moody v. Astrue*, No. 1:10-cv-397-TFM, 2011 WL 2693387, at *7 M.D. Ala. July 7, 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). Witness credibility is for the Commissioner to determine, not the courts. *See Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991); *see also Sellers v. Barhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002) ("The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts."). "If the ALJ decides not to credit . . . [a claimant's] testimony, he must do so explicitly, explaining why the testimony is not worthy of belief." *Sheldon v. Astrue*, 268 Fed. Appx. 871, 871-872 (11th Cir. 2008) (citing *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In general, an ALJ's evaluation of a claimant's symptoms considers "medical findings, a claimant's statements, statements by the treating physician, and evidence

regarding how the pain affects the claimant's daily activities and ability to work." *Moody*, 2011 WL 2693387 at *7 (citing 20 C.F.R. § 416.929(a)). When evaluating a claimant's subjective symptoms, the ALJ must also consider the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; the type, dosage, and effectiveness of medication; and any measures used by the claimant to alleviate the pain. *See* 20 C.F.R. § 416.929(c)(3). "Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence." *Cawley v. Astrue*, No. 1:10-cv-538-TFM, 2011 WL 4435435, at *6 (M.D. Ala. Sept. 23, 2011) (citing *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-665 (11th Cir. 2006)); *see also* 20 C.F.R. § 404.1529(c)(4) (stating that "We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . about how your symptoms affect you."). "A resolution of conflicts between the subjective evidence and the medical evidence should depend on the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Cullivan v. Shalala*, 886 F.Supp. 568, 577 (5th Cir. 1995). The ALJ is not, however, required to cite particular regulations, cite specific cases, or use particular phrases or formulations in their review of Plaintiff's subjective symptoms. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). All that is required is that the Court be able to determine if

the ALJ applied the statutory requirements and the Commissioner's regulations as applied by this Circuit. *Id.*

Here, the ALJ explained that her credibility assessment was partly based on the inconsistencies between Plaintiff's hearing testimony and Plaintiff's comments to Dr. Oboho and to a Georgia Disability Determination Services ("DDS") representative. *See* R. at 18-19. While, ultimately, the Court finds substantial evidence to support this conclusion, it bears noting that the ALJ overstated the inconsistency. The ALJ's opinion stated that Plaintiff testified "that he was unable to do household chores," *id.*, which the ALJ found to conflict with Plaintiff's earlier statements to doctors that he swept, mopped, vacuumed and cooked, *see* R. at 158, and that he mowed the lawn, cleaned, cooked, and performed maintenance and painting on his sister's home. *See* R. at 127. However, a review of the transcript shows that Plaintiff did not state he was "unable" to do household chores. Plaintiff instead stated that he could "cook," "wash a little dishes," and "keep everything straightened up," although he could not lift more than a gallon. R. at 316.

Nevertheless, while the ALJ overstated Plaintiff's comments, the ALJ was permitted to conclude that the Plaintiff's testimony as a whole painted a substantially more limited picture of his household contributions than his earlier statements.

Viewed as a whole, Plaintiff's testimony claimed a significantly impaired ability to do meaningful work, including chores: "I had got no energy whatsoever. I can get up and walk to the barn, which is just a house length, and by the time I come back in, I got to sit down. I can't make it out to the mailbox. Sometimes I have to sit out there by the kid's playhouse before I can come back in. I couldn't get enough air." R. at 316. This and other, similar testimony puts in context Plaintiff's testimony that he "wash[ed] a little dishes," etc., and could suggest that Plaintiff was at most discussing a minimal household role. Moreover, the ALJ was present to hear the Plaintiff's testimony in person and to gauge the Plaintiff's body language, tone, inflection and other things as he testified about chores and other subjects. For all of these reasons, the ALJ was justified in finding inconsistencies between the Plaintiff's hearing testimony and his earlier statements, and the ALJ's mistake in describing the extent of that inconsistency does not itself require remand.

Plaintiff argues that the ALJ was unreasonable in comparing Plaintiff's statements at the hearing in 2009 with his statement years earlier, in 2006 and 2007. In other words, Plaintiff argues that the differences between Plaintiff's chores in 2006/2007 and his more limited chores in 2009 could have simply been due to the passage of time and worsening of his condition. Obviously, that is true, and the passage of time between the statements is relevant to the factfinder's decision as to

whether there was an inconsistency at all and whether any inconsistency impacts credibility. But the temporal distance between the statements is not so great for this Court to take this classic factual determination away from the ALJ as a matter of law. The ALJ was in the best position to weigh all the facts and circumstances of these statements–including when and in what context they were made–and determine whether they detracted from the Plaintiff's credibility. The Court sees no basis to upset that here.[5]

The ALJ, moreover, found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . ., the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not creditable to the extent the are inconsistent with the . . . residual capacity assessment." R. at 18. The ALJ, in other words, found that the objective medical evidence undercut, rather than confirmed, Plaintiff's testimony. As

_____

[5] Moreover, even if the ALJ erred in finding inconsistencies in the Plaintiff's statements–whether because of the temporal gap between the statements and/or because of the ALJ's overstated description of the Plaintiff's household chore testimony–such error would be harmless. The ALJ considered other independent factors relating to credibility including, as discussed herein, that the historical medical records failed to support Plaintiff's claims. In light of the ALJ's consideration of the record as a whole–and his detailed findings as to how the medical evidence failed to support the Plaintiff's claims–a reversal and remand relating to the chore issue would not reasonably likely lead to a different result.

discussed above, the medical evidence includes Plaintiff's records related to his 2007 seizures; Dr. Oboho's evaluation; Dr. Suarez's review; and Dr. Minnis' review. Dr. Oboho's evaluation and the evaluations of the doctors who treated the Plaintiff for seizures in 2007 include detailed physical examinations. The ALJ reviewed these records and found that the findings made by these doctors were inconsistent with the limitations Plaintiff claimed. The ALJ's conclusions are supported by substantial evidence. Indeed, Dr. Suarez, in a finding that the ALJ expressly considered and relied on, opined that the Plaintiff's medical records did not fully support the extent of his claims. The ALJ was entitled to rely on this conclusion by a medical expert and other evidence in the record.

In sum, the Court finds that the ALJ based his credibility finding on substantial evidence and otherwise complied with governing law.

D.      *Reliance on the vocational expert's testimony*

The ALJ found that there are jobs that exist in substantial numbers in the national economy for which Plaintiff is suited. Those jobs include work in small parts assembly, work as a cashier or as a ticket seller. *See* R. at 21-22, 329-341.

Plaintiff argues that the ALJ could not properly rely on the vocational expert's testimony because that opinion was not based on substantial evidence. Plaintiff bases this assertion on the ALJ's failure to properly develop the medical record, as described above. Absent a fully-developed record, Plaintiff argues, the hypothetical the ALJ posed to the vocational expert was incomplete. *See* Pl. Br. at 15. Without this essential information, Plaintiff argues, the vocational expert's testimony did not constitute substantial evidence because it lacked sufficient foundation. *See id.*

The undersigned's earlier analysis of the ALJ's decision not to obtain additional consultative examinations addresses this argument. Plaintiff's arguments here are therefore unavailing.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

      **IT IS SO RECOMMENDED** this 19th day of October, 2012.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE